**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **FEDERAL TRADE COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. MC 06-12** |
| | ) | |
| **AMERIDEBT, et. al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM OPINION**

Pursuant to the referral of this matter to me for resolution of discovery disputes, the Court has received Non-Party John Vipulis' ("Vipulis") Motion for Protective Order, to Terminate or Limit Inspection, and/or to Quash Subpoena Issued to Rachlin Cohen & Holtz, LLP; Objections to Subpoena; and Supporting Memorandum of Law ("Vipulis' Motion") (Docket Item No. 1) and Objection, Motion to Quash and/or Motion for Protective Order ("Rachlin's Motion") (Docket Item No. 3) filed Non-Party Rachlin Cohen & Holtz, L.L.P. This matter was transferred from the United States District Court for the Southern District of Florida pursuant to that Court's Order on January 4, 2006.[1] The Court has reviewed Vipulis' Motion and Rachlin's Motion and the memoranda related thereto. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). The Court hereby GRANTS IN PART and DENIES IN PART both motions.

---

[1] The objection to the transfer of this matter to the District of Maryland from the Southern District of Florida was resolved on July 14, 2006. Miscellaneous S.D. Fla. Case No. 05-22241, Docket Item No. 57.

## BACKGROUND

Robb Evans & Associates, L.L.C., ("the Receiver") was appointed as the Receiver to marshal, conserve, protect, and operate the assets constituting receivership property ("Receivership Property") of Andres Pukke ("Pukke") and Debtworks, Inc. ("Debtworks"). In PJM 03-3317, the Court issued a preliminary injunction to "increase the likelihood of preserving assets, pending final determination of this matter." The instant disputes arise out of the Receiver's investigation[2] to ascertain the extent of Receivership Property.

### A. The Pukke-Vipulis Connection

Vipulis is a long-time personal friend and former college roommate of Pukke, the subject of the FTC action. Pukke testified that Vipulis is his oldest friend having known him since birth. Pukke's father is Vipulis' godfather. In 2002, Vipulis selected Pukke to serve as trustee for a family trust and a charitable trust, both benefitting Vipulis' family, and as an officer and director of Maple Ventures International Corporation. Pukke's roles in Vipulus' trusts and entities ceased in September 2003.[3] Rachlin served as Vipulis' personal accounting firm and also rendered services for his business entities in Florida. Vipulis' assets and accounts were previously frozen by the Receiver as potentially related to Pukke under this Court's Preliminary Injunction Order. The Receiver has located evidence of direct transfers between Pukke,

---

[2] The Federal Trade Commission ("FTC") commenced this civil enforcement action against AmeriDebt, Inc. ("AmeriDebt"), DebtWorks, Inc. ("DebtWorks"), and Andris Pukke ("Pukke") in November 2003. This action involves various violations of FTC regulations relating to unfair and deceptive trade practices while providing debt counseling services.

[3] Janis Pukke, Pukke's father, testified that in 1998 he invested $45,000 in a start up company called Internet Opportunity Entertainment, Inc., formed by non-party Vipulis. This company later became identified with Sportingbet.com from which Janis Pukke and Stephen Todd Cook, both non-parties under investigation by the Receiver, derived significant wealth.

DebtWorks, Vipulis and his sister, Donna Lacis, totaling $386,530 between July 2002 and July 2003. Pukke testified at deposition that he has loaned Vipulis between $500,000 and $1,000,000 in the past five years. J.V. Descendants Trust ("J.V."), a Vipulis trust, also transferred funds to Puck Key Investments L-1, L.L.C., a wholly owned Pukke company and property of the Receivership. Vipulis has not volunteered to be deposed by the Receiver as part of the ongoing investigation.

**B. The Receiver's Subpoena**

On July 12, 2005, the Receiver issued a subpoena to Rachlin seeking production of all documents relating to Vipulis and certain business entities and trust funds. The Receiver's subpoena seeks Rachlin's documents, including communications with named parties related to Vipulis' financial dealings. Those parties include: Vipulis; J.V.; Bluefish Investments, L.P./Inc.; Angelfish Investments L.P./Inc. ("Angelfish"); Goldfish Investments, L.P./Inc. ("Goldfish"); Spruce Investments, L.P./Inc. ("Spruce"); Cedar Investments, L.P., doing business as Maple Ventures International Corp./Cedar Investments, Inc.; and the P. Family Trust/The P. II Family Trust.

**C. Vipulis' Motion**

Vipulis moves the Court for a protective order under Federal Rule of Civil Procedure 26(a); moves to quash the Receiver's subpoena under Rule 45(c)(3)(A); and objects to the Receiver's subpoena under Rule 45(c)(2)(B). Vipulis' arguments in favor of the Motion to Quash are summarized as follows: (1) the Receiver's subpoena is overbroad and seeks documents irrelevant to the underlying action; (2) his tax returns and the tax returns of his business entities are confidential and subject to a right of privacy; (3) Florida's accountant-client

privilege prevents disclosure of the subpoenaed documents; (4) the attorney-client privilege and work product doctrine prevent the disclosure of the subpoenaed documents; (5) the Receiver's subpoena exceeds the scope of the Court's Preliminary Injunction Order requiring "reasonable efforts" to locate Receivership Property; and (6) the Receiver failed to notify the owners of the subpoenaed records of his request.

In the alternative, Vipulis argues that the Receiver's subpoena should be modified and that a protective order should be entered. Vipulis contends that the subpoena should be limited to those documents related to Pukke, that a Magistrate Judge should be permitted to review the documents *in camera*, and that the Court should enter a confidentiality order.

**D. Rachlin's Motion**

Rachlin was served on July 12, 2005 with a subpoena from the Receiver requesting production of documents related to Vipulis and several other non-party trusts linked to Vipulis. Rachlin objects to the production of these documents and moves to quash and/or enter a protective order to the Receiver's subpoena. Rachlin's objections are summarized as follows: (1) the subpoena is overbroad, vague, oppressive and imposes an undue financial burden on Rachlin; (2) some documents are protected from disclosure by the accountant-client privilege, the attorney-client privilege, and/or the work-product doctrine; (3) some of the subpoenaed documents possess proprietary trade secrets of Rachlin and/or clients of Rachlin; and (4) the production of certain documents would constitute an invasion of personal privacy. The non-parties provided privilege logs to identify documents protected from disclosure by the attorney-client privilege, attorney work-product doctrine and/or the accountant-client privilege.

**E. The Receiver's Response**

The Receiver filed a combined response to Vipulis' Motion and Rachlin's Motion. The Receiver argues that Vipulis' and Rachlin's claims of attorney client and work product protections are insufficiently supported, that Florida's accountant-client privilege is inapplicable to the present matter because it is not a federally recognized privilege, and that the subpoena is neither vague nor overbroad as it is sufficiently certain to allow Rachlin to identify over 2,000 pages of documents. Additionally, the Receiver argues that if Pukke was directly or indirectly in control of any of Vipulis' business entities, then Rachlin's documents of the affected Vipulis entities would be property of the Receivership.

The Receiver consents to the entry of a protective order limiting public disclosure of Rachlin's documents, protecting the confidentiality of any trade secret or proprietary information, and requiring notice to Rachlin and Vipulis in the event a demand for their information is made to the Receiver. Although the Receiver argues that the subpoena is not overly burdensome, it is willing to pay Rachlin's costs to produce the subpoenaed documents. The Receiver argues that Rachlin's reasonable costs should not exceed $1,000.

Given the relationship of the non-parties, the legal arguments and legal analysis required to resolve both motions, judicial economy is served by a joint discussion of the pending motions.[4]

[4] The Court neither addresses nor considers any arguments related to Pukke's history of personal and/or financial dealings with non-parties not pertinent to the resolution of the instant dispute, including Peter Baker, Alfred Francis Ballester, and Tina Norris and their related business entities. The information recited above provides sufficient context for this Court's analysis.

## ANALYSIS

**A. Issuance of the subpoena is within Rachlin's authority under the Preliminary Injunction Order and is not overbroad.**

1. The subpoena issued to Rachlin constitutes a reasonable exercise of the Receiver's power under the Preliminary Injunction Order.

Vipulis and Rachlin contend that the Receiver's issuance of the subpoena was unreasonable and therefore outside of the power granted by this Court. This Court disagrees. This Court finds that the issuance of subpoenas to Rachlin for documents constitutes a reasonable effort to determine the nature, location, and value of Receivership Property and is therefore within its powers as granted by the Court.

The Receiver is an extension of this Court and is bound by the Order through which it is appointed.[5] It is wholly empowered and constrained by the Order of the Court. It is "appointed in behalf of all parties, and not of the complainant or the defendant only. . .[t]he Receiver is a creature of the Court and has no powers except such as are conferred upon him by the order of his appointment and the course and practice of the court." *Atlantic Trust Co. v. Chapman,* 208 U.S. 360, 371 (1908). The powers of the Receiver in the present case include those conferred upon it by this Court's Preliminary Injunction Order dated April 20, 2005.

Section VI of the Preliminary Injunction Order confers upon the Receiver the power to use reasonable efforts to determine the nature, location, and value of all Receivership Property and take such action as it deems appropriate to prevent the dissipation or concealment of any

---

[5] "A receiver appointed by the Court is a person who by such appointment becomes an officer of the Court to receive, collect, care for, administer, and dispose of the property or the fruits of the property of another or others brought under the orders of Court by the institution of a proper action or actions." 1 RALPH EWING CLARK, THE LAW & PRACTICE OF RECEIVERS § 11 (3rd ed. 1959).

assets constituting Receivership Property. Further, Section XIII of the Preliminary Injunction Order specifically grants the Receiver the power to subpoena documents from any financial institution, account custodian, or other entity.[6]

Because the Receiver's powers, duties and obligations are determined by the Order through which it is appointed and because the Receiver is not affiliated with any party to the action, it is not constrained by the same rules of discovery to which a party would be constrained. *See, e.g., Atlantic Trust,* 208 U.S. at 371. The Preliminary Injunction Order permits the Receiver to use "reasonable efforts" to track Receivership Property. The determination of whether the Receiver's actions constitute "reasonable efforts" is one that this Court must make in its own discretion. In the absence of other guidance, some courts have adopted a definition of "reasonable" as that which is "fair, proper, or moderate under the circumstances." *See, e.g., In re Byrd ex rel Adoption of Byrd,* 529 S.E.2d 465 (N.C. App. 2000) (citing BLACK'S LAW DICTIONARY 1252 (7th ed. 1999). Using this standard, the subpoena is reasonable - it is a fair and moderate request of the Receiver made for the purpose of accurately executing its duties. The issuance of the subpoenas, as well as the information it requests, is reasonable because it is related to the nature, location, and value of Receivership Property and to the prevention of its dissipation or concealment, both objectives authorized under the Preliminary Injunction Order.

Even assuming, *arguendo*, that the Receiver's powers were restrained by the federal civil discovery process, production of Rachlin's records would still be required under the Federal

[6] Section XIII lists four groups included within this category. The list, however, is not exclusive. The Preliminary Injunction Order states that where the term "including" is employed, it shall mean "without limitation." Thus, the list is given for demonstrative purposes and not for the purpose of limiting the Receiver's authority to subpoena any financial institution, account custodian, or other entity.

Rules. Federal Rule of Civil Procedure 26(b) is liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at the trial. *See* FED. R. CIV. P. 26.[7] Further, Rule 45 allows parties to request documents and other information in the possession of non-parties. FED. R. CIV. P. 45, Advisory Committee's Note to 1991 Amendment. "The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34." *Id.* Likewise, investigation into Rachlin's records appear to be "reasonably calculated to lead to the discovery of admissible evidence" given the described relationship between Pukke, Vipulis and Vipulis' business entities and trusts. FED. R. CIV. P. 26(b)(1). Thus, even if the Receiver were limited to subpoenaing documents within the scope of the Federal Rules, Rachlin would still be obligated to comply with the subpoena. The Court finds, however, that the production of documents under the subpoena should be limited to the period from May 17, 2002 to present.[8]

---

[7] The rule states:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears treasonably calculated to lead to the discovery of admissible evident. All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).

FED. R. CIV. P. 26(b)(1).

[8] This is the date in which a prior order ceased. See the Preliminary Injunction Order of April 20, 2005, Section II.B.

2. The subpoenaed documents are relevant to determining the nature, location, and value of Receivership Property and therefore are not overbroad.

Both non-parties contend that the subpoena is overbroad. Rachlin contends that the request is overbroad because it seeks financial transactions and/or the financial condition of Rachlin's clients which are irrelevant to the present litigation. Vipulis also argues overbreadth because Vipulis has never been made a party nor been involved with Ameridebt or Debtworks. Both non-parties also argue that, for the entities to which the Receiver has not yet established a connection with Pukke, the subpoena should be quashed. Those entities include Angelfish, Goldfish, and Spruce. The fact that a connection has not yet been established, however, does not make the requested documents irrelevant.

While the Receiver has not established a firm connection between Pukke and Angelfish, Goldfish, and Spruce, the subpoenas are relevant to determining the nature, location, and value of Receivership Property. The Court is satisfied with the Receiver's description of the history between Vipulis and Pukke, the tracing of payments made from Pukke to Vipulis, Pukke's connection to internet gaming, and Pukke's general practice of surrounding himself with friends and family to act as recipients of money transferred from Pukke to them. Accordingly, this Court finds that the Receiver's requests through subpoena are relevant to determination of the nature, location, and value of Receivership Property and are therefore not overbroad. Rachlin's Motion and Vipulis' Motion are DENIED as to their arguments that the subpoena is unreasonable or overbroad.

**B. Rachlin has not demonstrated that the production of documents is unduly burdensome.**

Rachlin contends that the nature of the subpoenaed documents is vague and their production will be unduly burdensome. Specifically, Rachlin argues that because of the vagueness, he is unable to identify the records requested and that the production of such documents will be costly. However, the Court notes that the Receiver's subpoena was specific enough for Rachlin to identify over 2,000 pages of responsive documents, suggesting that the subpoena is not overly vague. Likewise, the Receiver offers to pay $1,000 for Rachlin's costs to produce the subpoenaed documents. Accordingly, Rachlin's argument that the subpoena is overly vague, oppressive, and unduly burdensome is not persuasive. The Court orders the Receiver to forward $1,000 to Rachlin to cover its costs for complying with the subpoena. Rachlin is to provide an accounting of the funds used in production of the records. Should the $1,000.00 be insufficient, Rachlin will make a request for reasonable additional costs. Rachlin's Motion is DENIED on these grounds.

**C. Florida's accountant-client privilege is inapplicable to the Receiver's subpoena.**

This Court does not find an applicable accountant-client privilege. Both Vipulis and Rachlin argue that the subpoenaed documents are protected from disclosure via Florida's accountant-client privilege. However, privileges in federal actions are determined by federal common law, unless involving a civil action in which state law supplies the rule of decision with respect to an element or defense, or as otherwise required by the U.S. Constitution or an act of Congress. FED. R. EVID. 501. This case concerns a federal question and this Court is not persuaded by Vipulis' argument that "this action, although traveling under federal statutes, also

presents numerous state law claims and defenses, which, in turn, trigger the application of state law privileges." Thus, the Florida accountant-client privilege does not apply in this action and federal common law provides instruction.

It is well settled that there is no federal accountant-client privilege. *Couch v. United States*, 409 U.S. 322, 335 (1973). Likewise, this Court has recognized that, although the federal courts are authorized to "continue the evolution and development of privileges of the common law," the approbation of such privileges must occur only to the extent that "excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Witten v. A.H. Smith & Co.*, 100 F.R.D. (D. Md. 1984), *aff'd*, 785 F.2d 306 (4th Cir. 1986) (citing with approval Justice Frankfurter's dissent in *Elkins v. United States,* 364 U.S. 206 (1960) and *Trammel v. United States*, 445 U.S. 40 (1980)). In balancing the desire for ascertaining the truth against the public good achieved by the recognition of such a privilege in the present case, the Court finds that the scales tip heavily toward disclosure.

Finally, although Vipulis argues that state law will come in to play at some point, this matter is fundamentally a federal matter and federal common law continues to rule. *See, e.g.*, *S.E.C. v. Coopers & Lybrand*, 98 F.R.D. 414 (S.D. Fla. 1982). Even if state law were applicable to some matter in this case, this Court has held that where a pendant state claim is attached to a federal claim, state law should not be applied to the entire case. *Lewis v. Capital Mtg. Invs.*, 78 F.R.D. 295, 313 (D. Md. 1977). This rule accords with the notion that "in any given instance a special federal interest in seeking the truth in a federal question case may require the admissibility of evidence despite the existence of a state rule holding such evidence to be

privileged." *Id.* at 313 (citing *Patterson v. Norfolk & Western Ry. Co.*, 489 F.2d 303 (6th Cir. 1973)). Pursuant to the foregoing, this Court rejects the arguments of Rachlin and Vipulis that an accountant-client privilege can be asserted and finds that no information requested through the subpoena may be withheld on this ground. Vipulis' Motion and Rachlin's Motion are DENIED as to this argument.

**D. The attorney-client privilege and corresponding work-product doctrine may prevent the disclosure of some of Rachlin's records.**

1. Attorney-client privilege

Rachlin asserts that it is precluded from providing many of the subpoenaed documents due to a derivative form of attorney-client privilege, relating to communications between Rachlin and Greenberg Traurig, L.L.P., counsel for Pukke and entities belonging to Pukke between 2002 and 2003. The attorney-client privilege "protects confidential communications between a client and an attorney for the purpose of obtaining legal advice." *Black & Decker Corp. v. United States*, 219 F.R.D. 87, 90 (D. Md. 2003). The privilege protects the substance of communications and extends to protect communications by the lawyer to his client and agents if those communications reveal confidential client communications. *United States v. (Under Seal)*, 748 F.2d 871, 874 (4th Cir. 1984).

A client can claim a derivative attorney-client privilege where an agent is employed to assist the lawyer in the rendition of professional legal services. *See, e.g.*, *Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188 (4th Cir. 1991) (applying *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961)). Communications made between the client and his agent, made for the purpose of facilitating the rendition of legal services, are covered by the attorney-client privilege. *Grand Jury*, 947 F.2d at 1191. Such a derivative privilege, however, is

narrowly interpreted. *Black & Decker,* 219 F.R.D. at 90. The *Black & Decker* Court cites four factors relevant in determining the applicability of a derivative privilege:

> (1) to whom was the advice provided–counsel or the client; (2) where client's in-house counsel is involved, whether counsel also acts as a corporate officer; (3) whether the accountant is regularly employed as the client's auditor or advisor; and (4) which parties initiated or received the communications.

*Id.* (citing *U.S. v. Adlman,* 68 F.3d 1495 (2d Cir. 1995) and *United States v. Chevron Texaco Corp.*, 241 F. Supp.2d 1065 (N.D. Cal. 2002)).

It appears that to the extent that the communications listed on the privilege log are between the Rachlin and Greenberg Traurig, they may satisfy the first element. This first element stems from the concept that the derivative privilege exists to assist the attorney in understanding the client's financial information. *Adlman*, 68 F.3d at 1499. Just because the communication is between the accountant and the attorney, however, does not signify that it was for the purpose of providing advice. More information is necessary, specifically indicating whether the purpose of the correspondence was to provide advice at all.

The second factor does not apply in this case. With respect to the third factor, it is not clear whether Rachlin has been regularly employed as Vipulis' auditor or advisor. Rachlin bears the burden of proving this factor.

The privilege log provides information regarding from whom the correspondence was sent, and to whom it was directed, addressing the fourth *Black & Decker* factor. However, without more detail regarding the nature of the communications it is also not clear who initiated the communications. The purpose of this element is to assist in understanding the overall picture of whether the communications assisted the attorney in understanding his client. The brief

descriptions in the privilege log do not provide such information and to that extent do not satisfy the fourth factor.

Although the above factors are helpful, they are not solely determinative. They assist the Court in arriving to the heart of the issue: whether the purpose of the communication between the accountant and the attorney was to assist the attorney in interpreting the client's otherwise privileged communications or data. *Chevron*, 241 F. Supp.2d at 1071. It is the obligation of Vipulis and Rachlin to describe the nature of the documents "in a manner that, without revealing information itself privileged . . . , will enable other parties to assess the applicability of the privilege. . . ". FED. R. CIV. P. 26(b)(5). Vipulis and Rachlin have not satisfied their burden at this time.

Because the application of such a privilege is inconsistent with the general duty to disclose and impedes the investigation of the truth, the privilege must be strictly construed. *United States v. (Under Seal)*, 748 F.2d 871, 875 (4th Cir. 1984); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984). Without more detailed information, this Court cannot grant the motions of Vipulis and Rachlin on the grounds of attorney-client privilege, therefore Rachlin's and Vipulis' Motions are DENIED on this ground.

2. Work-product doctrine

The Court also notes that work product doctrine is claimed as a privilege preventing disclosure. To qualify as work product, Vipulis and Rachlin must show that the documents were made "in anticipation of litigation or for trial." FED. R. CIV. P. 26(b)(3). If not, there is no further inquiry. *See, e.g., Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980 (4th Cir. 1992). Here, there has been no suggestion that any of Rachlin's records were even

collected or prepared in anticipation of trial. In support of this contention, Rachlin and Vipulis must provide specific factual support. The Court cannot grant the motions of Vipulis and Rachlin on these grounds. Vipulis' Motion and Rachlin's Motion are DENIED with respect to arguments based upon the work-product doctrine.

**E. The tax returns of Vipulis are not entitled to confidentiality or a right to privacy.**

Vipulis is incorrect in his assertion that tax returns are confidential and protected by a right to privacy. Although section 6103 of the Internal Revenue Code provides for confidentiality of tax returns within the hands of the government bureau, copies in the hands of a taxpayer are subject to discovery. I.R.C. § 6103 (West Supp. 1998); *St. Regis Paper Co. v. United States*, 368 U.S. 208, 219 (1961). Here, the requested tax returns are not in the hands of a government official, but in the hands of Rachlin.

While the tax returns are in the hands of Rachlin, the result is the same as if they were in the hands of the taxpayer himself. In *St. Regis*, the Supreme Court drew an analogy between the disclosure of tax returns and the disclosure of trade secrets. *Id.* Just as the Internal Revenue Code prohibits disclosure of tax returns, the federal criminal code prohibits federal employees from disclosing trade secrets and other business data received in the course of the official duties. 18 U.S.C. § 1905. The *St. Regis* Court found that the same information that is confidential in the hands of federal employees is obtainable from a reporting company's files or personnel by judicial process. 368 U.S. at 219. Just as a third party in possession of trade secrets and business data is subject to a subpoena, so is Rachlin with respect to Vipulis' tax returns. The

fact that Rachlin possesses the tax documents does not protect them from reach of the subpoena. *See also, Maggio v. Hynes,* 423 F. Supp. 144 (E.D.N.Y. 1976). Vipulis' Motion is DENIED on this ground.

**F. A limited protective order is required to prevent the public disclosure of Vipulis' private information contained in Rachlin's records.**

Federal Rule of Civil Procedure 26(c) provides that "for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .". The Rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Furlow v. United States*, 55 F. Supp. 2d 360, 366 (D. Md. 1999) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

Rachlin contends that the subpoena seeks documents belonging to a "litany of persons and entities without notifying those persons and entities" and that its work papers contain trade secrets and other proprietary information. Rachlin provides no support for its argument that the "litany of persons" have not been notified or should be notified. However, the Court recognizes that, while the public has the right to know the results of the investigation conducted by the Receiver, sensitive information such as trade secrets and proprietary information should be protected from public disclosure. The Receiver agrees to the Court entering a reasonable protective order and the Court finds it necessary to protect such sensitive information. The Court will therefore enter a limited protective order on behalf of Rachlin and Vipulis.

The Receiver suggests the possibility of *in camera* review of subpoenaed documents and of the Receiver giving prior notice to Rachlin or Vipulis should any of their documents be subpoenaed from the Receiver. The Court will require that the Receiver give notice to Rachlin

and/or Vipulis of any demand made to the Receiver for disclosure of records obtained by the Receiver through subpoena of Rachlin's records. If an *in camera* review is thereafter requested, the Court will rule upon the request.

Vipulis' Motion and Rachlin's Motion are GRANTED IN PART with respect to the issuance of a limited protective order. The Court requests that a joint proposed protective order be prepared by the Receiver, Vipulis and Rachlin and be submitted for approval by this Court within thirty days of the issuance of this opinion.

**CONCLUSION**

The Court DENIES Vipulis' Motion and Rachlin's Motions to Quash the Receiver's subpoena and GRANTS IN PART Vipulis' and Rachlin's Motions for Protective Order. The Court's finds:

(1) that the Receiver is empowered to subpoena relevant non-party financial records without leave of the Court;

(2) that the Receiver's subpoena for non-parties Vipulis and Rachlin are relevant, not overbroad, and not overly vague;

(3) that to the extent that the production of documents is unduly burdensome, Receiver shall remedy this burden by forwarding Rachlin $1,000.00 for costs associated with document production, and future fees as they may become necessary;

(4) that non-parties Rachlin and Vipulis are not insulated from production of subpoenaed documents through Florida's accountant-client privilege;

(5) that non-parties Rachlin and Vipulis have provided insufficient evidence to demonstrate that any of the subpoenaed documents are protected from production through the attorney-client privilege or work-product doctrine;

(6) that Vipulis' tax returns are not confidential and are therefore subject to subpoena by the Receiver;

(7) that a limited protective order preventing the public disclosure of certain private information and requiring the Receiver to inform Rachlin and Vipulis of any demand for disclosure of their documents is necessary; and

(8) that a joint proposed protective order is required from the Receiver, Vipulis and Rachlin within thirty days of the issuance of this opinion.

/s/
Charles B. Day
United States Magistrate Judge

October 12, 2006

CBD:acg